In re CONTINENTAL AIRLINES COR-
PORATION, Continental Air Lines,
Inc., Texas International Airlines, Inc.,
Txia Holdings Corporation.

Nos. 83–04019–H2–5, 83–04020–H1–5,
83–04021–H3–5 and 83–04022–H3–5.

United States Bankruptcy Court,
S.D. Texas.

June 26, 1986.

John J. Gallagher, Charles Warren, Timo-
thy B. Fleming, Akin, Gump, Strauss,
Hauer & Feld, Washington, D.C., Myron M.
Sheinfeld, Lenard M. Parkins, Sheinfeld,
Maley & Kay, Houston, Tex., Harvey R.
Miller, Bruce R. Zirinsky, Weil, Gotshal &
Manges, New York City, for debtors Conti-
nental Airlines, et al.

John O'B. Clarke, Jr., William J. Birney,
Thomas P. Murphy, Highsaw & Mahoney,
Washington, D.C., for IAM–Intern. Ass'n
of Machinists and Aerospace Workers.

Claude Montgomery, Booth, Marcus &
Pierce, New York City, for Union Labor &
Pension Committee.

Clifford H. Brown, Ervin, Cohen & Jessup, Beverly Hills, Cal., for Non-Union Labor & Pension Committee.

FINDINGS OF FACT AND CONCLUSIONS OF LAW DISALLOWING CERTAIN MISCELLANEOUS LABOR PROTECTIVE PROVISION CLAIMS

T. GLOVER ROBERTS, Bankruptcy Judge.

*Findings of Fact*

1. On August 14, 1981 the Civil Aeronautics Board ("CAB") approved the acquisition of Continental Air Lines, Inc. by Texas International Airlines, Inc., CAB Order No. 81–10–66. As a condition to its approval of the acquisition, the CAB imposed labor protective provisions ("LPPs") "to provide for compensatory allowances to employees who may be affected by the proposed acquisition." Order No. 81–10–66. Section 1 of the LPPs states:

> The fundamental scope and purpose of the conditions hereinafter specified are to provide for compensatory allowances to employees who may be affected by the proposed acquisition by Texas International Airlines, Inc. (TI) of Continental Air Lines, Inc. approved by the attached order, and it is the intent that such conditions are to be restricted to those changes in employment due to and resulting from such acquisition. Fluctuations, rises and falls, and changes in volume or character or employment brought about by other causes are not covered by or intended to be covered by these provisions.

The LPPs provided three basis types of compensation for changes in employment "due to and resulting from" the acquisition: (1) a displacement allowance for those employees who received lower compensation; (2) a dismissal allowance for those employees whose jobs were abolished; and (3) relocation expenses for those employees who were forced to move.

2. Pursuant to the CAB's authorization, Texas International consummated its acquisition of Continental on October 12, 1981. During 1982, Continental and Texas International began to integrate their operations. On October 31, 1982, the two carriers implemented a corporate reorganization and an operational merger under the name "Continental." The employees, routes, flight schedules, and fleets were combined as one operation. The employees in each class were combined under the representation of single unions. In accordance with the LPPs, many employees who lost their jobs or who received reduced wages as a result of the acquisition applied for and received the prescribed LPP benefits.

3. This Court has previously rejected the claims for labor protective provision benefits filed by ALPA[1] and individuals[2] based upon the theory that the filing of Chapter 11 proceedings and the subsequent reduction in force entitled employees to LPP recovery. This ruling was based upon the Court's conclusion that LPPs are designed to protect employees only against consequences flowing directly from a merger or acquisition, *not* against the consequences of changes in management policy or operations in general.

4. On September 19, 1985, Debtors moved to disallow and estimate at zero value the claims for LPP benefits filed by employees in the following categories:

a. employees hired after October 12, 1981;

b. employees who refused to relocate to maintain their employment;

c. employees who were on strike during all or part of the time period for which they seek LPP benefits.

1. Order Granting Debtors' Motion for Summary Judgment on ALPA's Claim for Labor Protective Provisions (Sept. 10, 1985); Uncontested Facts And Conclusions Of Law With Respect To Order Granting Debtors' Motion For Summary Judgment On ALPA's Claim For Labor Protective Provisions (Sept. 10, 1985).

2. Order [Disallowing Individual Bankruptcy Related LPP Claims] (Oct. 16, 1985); Findings Of Fact And Conclusions Of Law With Respect To Claims By Individual Employees For Labor Protective Provisions (April 11, 1986).

*Conclusions of Law*

■ 1. Employees hired after the acquisition date, October 21, 1981, are not entitled to collect benefits under the LPPs ordered by the CAB. The CAB itself has interpreted the term "employee" as used in its standard LPPs to mean those persons who have "important employment rights *at the time of the merger*" which is the subject of the Order. *American-Trans Caribbean Merger Case,* 55 C.A.B. 684, 692 (1970). The language of that case makes clear that LPPs protect individuals who have an existing employment relationship with the carrier at the time of the merger, including employees who are not actively working. For example, furloughees, or employees on military or sick leave, have certain employment rights, such as the right to recall. The CAB has held that in order to be protected these rights must exist "at the time of the transaction in question is consummated." *Application of Delford M. Smith, et al.,* Docket 28670, Order No. 76–6–25 (June 4, 1976). *Accord, Delta-Northeast Merger Case (Petition of Edward Counter),* Docket 23315, Order No. 77–7–34 (July 11, 1977); *Trans International Airlines, Inc., et al.,* Docket 26951, Order No. 76–9–15 (September 2, 1976). In the *Delta-Northeast* case, *supra,* the CAB restricted its holding even further by denying a moving allowance to an employee who had been on furlough on the LPP trigger date:

> The line of important employment rights cases ... were [*sic*] not so much concerned with protecting particular individuals affected by a merger as they were with recognizing contractually bargained for rights ... such as the right to recall and seniority status.... Thus, the Board concluded that those employees with contractual recall rights obtained through collective bargaining would be entitled to be included in a post-merger integration of employee seniority lists.... However, this analysis does not lead to the proposition that the Board should in effect extend to employees various rights—such as right to a relocation allowance—which are not included in their contracts.

Thus, and individual who had no employment rights at the time of the merger would not be protected by LPPs. The CAB designed LPPs to protect only those employees who were employed at the time of the transaction that gives rise to the LPPs, and whose employment and attendant contractual rights existing at the time of the merger could be affected adversely by the transaction. This obviously cannot apply to those employees hired after the acquisition date and, consequently, claims by those individuals will be disallowed.

■ 2. The only question presented by oppositions to Debtors' motion regarding this group of claimants is the date to be used for determining who was hired post-acquisition. The Court here holds that the event to be considered as triggering a cut-off of individuals hired post-acquisition for LPP consideration here is the date the acquisition was consummated. That date is October 30, 1982. This Court therefore concludes that October 30, 1982 is the acquisition date and, hence, is the proper date for identifying the employees protected by LPPs.

■ 3. Employees who refused to relocate following the Chapter 11 filing are not entitled to LPP benefits because of their subsequent termination. Debtors addressed the claims of this group of employees in both its original memorandum and its response to oppositions. Debtors seek disallowance only of those claims by employees who resigned prior to the bankruptcy rather than relocate. Debtors' motion did not seek to disallow claims by displaced employees or those receiving dismissal allowances on the operative date. As the CAB articulated in *United-Capital Merger Case,* 33 C.A.B. 307, 329 (1961), LPPs provide ample protection to employees who *agree* to relocate (by providing for reimbursement of moving expenses) but do *not* extend such protection to those refusing to relocate. The logic of this policy, as expressed by the CAB, is inescapable: if full LPP benefits were available to every

employee who decided not to move, the assets of the carrier could be quickly depleted. This rationale is even more pertinent in the bankruptcy context where the assets of the estate must be jealously guarded. The Court concludes that those employees who chose resignation over relocation are not entitled to LPP benefits.

 4. Employees who were or are on strike against Debtors are not entitled to LPP benefits for any period of time during which they purposefully withheld their services from Debtors. Section 1 of the LPPs specifically sets forth the purpose of the provisions: to provide for compensatory allowances to employees adversely affected by the acquisition. This Court recognized the well-established labor law principle that striking workers are not entitled to wages or other compensation in disallowing strikers' claims for contract rejection damages. *See* Uncontested Facts And Conclusions Of Law Relative To Debtors' Motion For Summary Judgment With Respect To Contract Rejection Claims Of Strikers (Sept. 10, 1985). The reasoning relied upon in that holding is equally applicable to these LPP claims and dictates a similar conclusion. Because the LPPs clearly state the compensatory nature of the benefits, the court holds that striking employees are not entitled to recover those benefits since they are not entitled to compensation while on strike.

5. Employees asserting valid LPP claims carry a burden of documenting efforts to obtain alternative employment in an attempt to mitigate damages. *See, e.g., Pan American Trans World Airlines Route Exchange Agreement,* Docket 27114, Order No. 82–12–27 (December 9, 1982). This obligation is a natural outgrowth of the policies discussed above: protection of both employee rights and company assets. The LPPs specifically provide for a reduction in payments equal to unemployment benefits or wages received. *See* Section 5(h). For the reasons noted here and those set forth in the *Pan American* decision, all employees or former employees properly claiming LPP ben-

efits must mitigate damages by seeking new employment. Said employees, because they are the only source of knowledge concerning efforts made in this regard, must be prepared to show the court that they diligently sought employment following their termination.

### Conclusion

6. For all of the reasons set forth above, the Court finds that Debtors Motion for Summary Judgment disallowing certain labor protective provision claims should be granted subject to the restrictions as created by the Court's definitions of "acquisition date" of the merger. Such claims are therefore disallowed and estimated at zero value pursuant to 11 U.S.C. § 502(c).